## DUNGAN *v.* VON PUHL.

The proceedings authorized by chapter eighty of the Code, were designed to enable the occupying claimant of land, under color of title, who has, in good faith, made valuable improvements thereon, and who is afterwards, in the proper action, found not to be the rightful owner thereof, to have his improvements appraised, that he may obtain payment therefor, or in

default of such payment being made, in the time fixed by the court, to enable the claimant to acquire the title to the land, by paying to the owner its appraised value, aside from the improvements.

As indispensable to the remedy designed to be afforded by the statute in relation to occupying claimants, it is required that the value of the land, aside from the improvements, as well as the value of the improvements themselves, shall be ascertained by the jury, unless such value is agreed upon by the parties.

When the appraisement is made, no *personal* judgment for the ascertained value of the improvements, can be rendered by the court, against the owner of the land.

It is not the intention of the statute in relation to occupying claimants, that a personal judgment should be rendered in favor of either party, or that the lands or improvements should be ordered to be sold to pay such judgment.

Where in a proceeding by an occupying claimant, to recover payment for his improvements, the petition prays judgment for the value thereof against the defendant, the court possesses no power to render such a judgment; and the rendition of such a judgment, without questioning the right of the court, is not a waiver of all objections to such a judgment by the defendant; nor is he precluded from objecting to such a judgment, for the first time, in the appellate court.

Upon rendering judgment, under the law in relation to occupying claimants, for the value of the improvements upon land, owned by another, the court possesses no power to order that the land be sold under a special execution to be issued on the judgment.

While the act entitled "An act to amend chapter 80 of the Code," approved March 23, 1858, is made to apply to judgments rendered previous to its passage, it cannot have the effect to render valid, a judgment *in personam* against the owner of land, for improvements made thereon by an occupying claimant, nor an order for the sale of the land under a special execution to be issued on such judgment.

Where land is enclosed and put in a state suitable for cultivation, and the raising of crops, a value is added to the land above the mere cost or value of the improvements put upon it; and the occupant may reasonably be charged a fair sum for the use and occupation of the land in its improved state. In such a case, he pays rent, not upon the improvements, but upon the land worth more for the purpose for which he uses it, by reason of its being brought into a state fit for cultivation.

In cases under the law in relation to occupying claimants, the owner is entitled to the rents and profits according to the value of the land, for the purpose to which it is devoted by the occupant; and the occupant is to pay what the use of the land is worth to him.

Under our statute, the occupant of land under color of title, who is found not to be the rightful owner thereof, is to be paid for valuable improve-

ments, made by him in good faith—their value to be ascertained by their worth at the time the appraisement is made; and as resulting from this rule, he should not be charged with the rent of the improvements made by him, but should pay whatever the land has been worth to him. The estimate should be made upon all the land brought into a state of cultivation by him, and suitable for the raising of crops, or for farming purposes, but no rent is to be charged for the use of buildings or farm fixtures erected by the occupant; and a deduction is to be made, for any injury done to the land, by cutting timber, or otherwise, by the occupant while in his possession.

### Appeal from the Des Moines District Court.

### Tuesday, April 12.

Von Puhl recovered judgment against Dungan for the possession of a tract of land in Lee county, and this suit is brought by Dungan to stay execution of the judgment, and to obtain payment for the improvements on the land, under chapter 80 of the Code of Iowa.

The petition states the value of the improvements to be $1,500; and the value of the land, aside from the improvements, to be $2,500; and prays judgment against the said Von Puhl for the value of the said improvements, with costs, &c. The defendant put in a general denial of the allegations of the petition, and sought to set-off against the plaintiff's claim for improvements, the sum of $1,600, for the rents and profits of the land for six years next prior to the commencement of the action for the recovery of the land.

The jury, under the direction of the court, found a verdict for the plaintiff, and assessed the damages at twelve hundred dollars. For this amount, judgment was rendered against the defendant, Von Puhl; and the court further ordered that the land be sold to satisfy the judgment, and that a special execution issue for that purpose.

*Rankin, Miller & Enster*, for the appellant, cited *Steele* v. *Spruance*, 22 Penn. State, 260; *Bell's Heirs* v. *Burnett*,

2 J. J. Mars., 519; *Jones* v. *Jones*, 4 Gehn., 87; 6 Ford, (N. H.) 41; Code, 2008, 2023.

*M'Creary & Bruce*, for the appellee, relied on *M'Gregor*, *Laws & Blackmore* v. *Armill*, 2 Iowa, 30; *Schlencher* v. *Risley*, 3 Scam., 448; *Elliott* v. *Armstrong*, 4 Blackf., 424; *Haskins* v. *Spelter*, 1 Dana, 177; 3 Ib., 574; *Pangburn* v. *Ranney*, 11 Johns., 141; *Close* v. *Stewart*, 4 Wend., 95; *Dunham* v. *Simmons*, 5 Hill, 507.

STOCKTON J.—It is first assigned for error, that the district court rendered judgment *in personam* against the defendant, and ordered the land to be sold under a special execution.

We have no doubt but that the action of the court in this respect, was erroneous. The proceedings authorized to be had under chapter 80 of the Code, were designed to enable the occupying claimant of land, under color of title, who has, in good faith, made valuable improvements thereon, and who is afterwards, in the proper action, found not to be the rightful owner thereof, to have his improvements appraised, that he may obtain payment therefor, or in default of such payment being made in the time fixed by the court, to enable the claimant to acquire the title of the land, by paying to the owner its appraised value, aside from the improvements. As indispensable to the remedy designed to be afforded by the statute, it is required that the value of the land, aside from the improvements, as well as the value of the improvements, shall be ascertained by the jury, unless such value is agreed upon by the parties.

When the appraisement is made, no personal judgment for the amount ascertained, can be rendered by the court. The statute provides that the plaintiff in the main action, may pay the appraised value of the improvements, and take possession. If he fails to make payment in the time fixed by the court, the owner of the improvements may pay the appraised value of the land, and keep possession of both. Sections 1236–8. It is wholly aside from the intention of

the statute, that a personal judgment should be rendered in favor of either party, or that the land or improvements should be ordered to be sold to pay such judgment. So, the proceedings are defective and imperfect, if the value of the land is not ascertained, as well as of the value the improvements.

The plaintiff, as required (section 1234), avers in his petition that the land, aside from the improvements, is worth $2,500. But the parties seem to have made no issue on the value of the land. Aside from general denial of the allegations of the petition, no notice is taken in defendant's answer, of this averment of the petition, and there is no finding by the jury of the value of the land. Indeed, the parties seem not to have supposed such finding necessary, or that it comprised, in any sense, an essential part of the proceedings in the cause.

It is argued by the plaintiff, that as the petition prays judgment against the defendant for the value of the improvements; and as defendant takes issue upon the alleged value of the same, without questioning the right of the court to render such a judgment, he has thereby waived all objections to the judgment *in personam*. And that, as no such objection was made in the district court, the defendant cannot, in this court, first make the question as to the nature or form of the judgment rendered.

Although the petition of the plaintiff prays judgment against the defendant for the value of his improvements, yet it seems, in other respects, drawn with special reference to chapter 80 of the Code, and to the relief designed to be afforded by that chapter to the occupying claimant. The plaintiff expressly prays that no execution may issue on the judgment to put the defendant in possession of the land, until the provisions of said chapter 80 are complied with.

The relief sought, then, was such only as might be granted to the occupying claimant consistent with the object and spirit of the statute, and no power or jurisdiction to render a judgment *in personam*, was conferred upon the court by

the prayer for such judgment in the petition. The court could make such final adjudication only as the statute authorized; and a judgment *in personam* was erroneous, though prayed in the petition, and not specially objected to by defendant.

We are quite as clear that the district court, upon rendering judgment against the defendant, had no authority to make the further order that the land be sold under a special execution to be issued on the judgment. At the date of the proceedings, there was no law in existence to authorize any such execution. By the act of March 23, 1858, the owner of the title to the land, is allowed three years within which to pay the occupying claimant the appraised value of his improvements; if he does not make payment within that time, the owner of the improvements may issue execution for the value of the same, which may be levied on the land or on any other property of the owner of the title, not exempt from execution. Session acts, 330. This act is made to apply to judgments rendered previous to its passage, but it cannot have the effect to render valid, as claimed by the plaintiff, the judgment and order of the district court in this cause.

We come next to the ruling of the court, as to the rents and profits with which the plaintiff is to be charged. The court instructed the jury, that the defendant was entitled to recover rents and profits for the use of his land, which were to be set-off against the improvements; and that, in estimating such rents and profits, they were not to consider the improvements made by plaintiff, but were to allow for the rent of the land in its unimproved state.

No question was made in the district court, nor is any made in this court, as to the right of the defendant in this proceeding, to set-off the rents against the plaintiff's claim for the improvements on the land. His right to do so has been acquiesced in, as though the same was as well settled as his right to set-off any injury to the land, by cutting timber, or otherwise, against the claim of the occupant for im-

provements made.   Code, section 1241.   Admitting that
defendant was entitled to set-off the rents and profits of the
land, in this proceeding, against the plaintiff's claim for the
value of his improvements, we think there was error in the
charge of the court, in the rule established for estimating
the value of the rents and profits.

In the early settlement of the western  country, the use
and occupation of unimproved prairie or timber land, would,
as a general rule, be considered of no value.   The annual
rents and profits of such land would be considered nothing.
But if the land is enclosed, and put in a  state suitable for
cultivation and the raising of crops, not only is a value
added to the land above the mere cost or value of the im-
provements put upon it, but the occupant may reasonably
be charged a fair sum for the use and occupation of the land
in its improved state, without having the right to complain
that he is required to pay rent for improvements made by
himself.   He pays rent, not upon such improvements, but
upon land, worth more for the purpose for which he uses it,
by reason of its being brought into a state fit for cultivation.
The owner is entitled to rents and profits according to the
value of the land, for the purpose to which it is devoted by
the occupant.   The occupant is to pay what the use of the
land is worth to him.   In such a rule, we think, there will
nothing be found inequitable.   It does not require the occu-
pant to pay rent on improvements made by himself.   But
it does require him to pay rent according to the increased
adaptation of the land for the purpose for which it is used,
though such adaptation has been brought about by the occu-
pant's own labor.   It is difficult to lay down a rule that will
work alike fairly and equitably in all cases—of land im-
proved by inclosure, and by being rendered suitable for the
raising of crops, and of an unimproved lot in a town or
city.   All that we can say is, that the occupant is to be
charged for the rents, whatever the use of the property has
been worth to him, whether it be prairie land or a vacant
city lot.   While he has the right to claim payment for the

value of his improvements, he cannot complain of being held to pay, as rents and profits to the owner, all that the property has been worth to him, nor in being held to the rule that the value of such rents may be increased by the labor he has placed upon it.

In *Bell's Heirs* v. *Burnett*, 2 J. J. Mar., 516, a purchaser who had acquired title to land, and entered upon it in good faith, on yielding possession to the better title, was allowed actual, or prime cost for his improvements, and was charged with rent of the lands and of the improvements annually, as they were made.

In *Haskins* v.*Spiller*, 1 Dana,170, a claimant under a will, in which he was pretermitted, obtained a decree for his share of the land. It was held, that if any improvements should fall in the portion allotted to him, he must compensate the proprietor therefor, according to the enhanced value the improvements may have given to his share, at the time of making the allotment, subject to a deduction for the waste and deterioration the soil may have suffered from use, and of a reasonable rent for the occupancy of his share while in possession of defendants, according to the assessed value of the rent, if anything; provided the land had remained in the situation it was in when the defendants took possession. The same case was again before the Court of Appeals of Kentucky, in 3 Dana, 573, and it was held, that defendant was to be paid for his improvements according to their deteriorated value, (not their actual cost), and that the estimate of the rent, was to be made with reference to the condition of the land when the occupant entered upon it.

In *Barnett* v. *Higgins*, 4 Dana, 565, the occupant was allowed for improvements, at their estimated value, when new—and the court held it proper, under the circumstances, to allow the owner of the land, rents upon the land from the time it was put in cultivation and used by the occupant.

In *Whitings* v. *Taylor*, 8 Dana, 441, it was held that although the complainants could not, against the plea of the

statute of limitations, recover rents for more than five years before the commencement of the suit, they were entitled to set off the rents and profits of the previous years, and of the whole period of defendant's occupancy, as far as might be necessary, against the claim of the defendants to be compensated for ameliorations to the land, or for improvements made upon it in good faith.

We think the rule to be gathered from the Kentucky cases, is this : that where the occupant is allowed for the actual value of his improvements, or their value when made, he is to pay for the use and occupation of the same. But where the improvements are estimated according to their deteriorated value, when possession is given, the occupant is not to be charged with the use of the same, but only for the rent of the land, without the improvements.

In *Elliott* v. *Armstrong*, 4 Blackf., 424, possession was recovered of a town lot. The occupant was allowed two thousand dollars for improvements placed thereon by himself. The court held that he was entitled to the use of the buildings free of rent, because they were erected at his own expense ; and he was to be charged with rent of the lot, without improvements.

In *Montgomery* v. *Chadwick*, 7 Iowa, 114, it was held by this court, that a mortgagee of a town lot in possession, was to be paid for the cost of erections made by him, and was to be charged with rents upon the lot and improvements.

Under our statute, the occupant of land under color of title, who is found not to be the rightful owner thereof, is to be paid for valuable improvements, made by him in good faith ; and their value is to be ascertained by their worth at the time the appraisement is made. As resulting from this rule, we think he should not be charged with the rent of the improvements made by him, but should pay whatever the land has been worth to him. The estimate should be made upon all the land brought into a state of cultivation by him, and suitable for the raising of crops, or for

farming purposes; but no rent is to be charged for the use of buildings or farm fixtures erected by the occupant. And a deduction is to be made for any injury done to the land, by cutting timber or otherwise, by the occupant, while in his possession.

Judgment reversed.