BISCOE ET AL. VS. BYRD ET AL.

The acknowledgment of a deed is valid, if taken before a judge or justice of the peace, within the limits of the State in which he is commissioned to act—it being a ministerial, not a judicial act.

*Appeal from the Circuit Court of Pulaski County.*

Hon. WM. H. FEILD, Circuit Judge.

PIKE & CUMMINS, for the appellants.

CURRAN, for appellees.

Mr. Justice WALKER delivered the opinion of the Court.

As nearly all of the questions arising in this case, depend upon the contingency that we hold the deed of mortgage from Byrd to the Real Estate Bank, to be improperly registered, we will proceed to state the facts necessary to a proper understanding of the issue touching that point, and to investigate it.

The bill, in this case, was filed by the trustees of the Real Estate Bank, to disencumber the lands conveyed by deed of mortgage to the Bank by Byrd, to secure the payment of all such sums of money as he might borrow from the Bank on account of subscriptions for stock; and, upon which, as such stockholder, he had borrowed $7.600; and to foreclose the mortgage, and subject the property to the payment of said debt.

The mortgage deed was filed and admitted to record, together with the certificate of acknowledgment, taken before a justice of the peace, on the 16th day of September, 1837.

On the 24th day of June, 1840, Andrew R. Jones and William Woodward, recovered judgment, in the Circuit Court of the United States for the District of Arkansas, against Byrd and Dunn, for the sum of $5.661 43 damages and costs of suit; upon which judgment such proceedings were had, that, on the 25th day of November, 1844, George C. Watkins became the purchaser of the land so mortgaged to the Bank, to whom a regular deed was made and recorded on the 30th November, 1844.

On the 10th November, 1840, Edward Pitman & Co., recovered judgment in the Pulaski Circuit Court against Byrd & Dunn, for

the sum of $1.617 73 damages, together with costs: and, also, another judgment for the sum of $3.668 05 damages, together with costs; each of which judgments, by force of the statute, created liens upon the real estate of the defendants, within the county in which they were rendered, from the day of the rendition thereof respectively.

Under this state of case, the contest, for priority of title, is raised between the Bank, the mortgagee, and Watkins, the purchaser, under the judgment lien.

Conceding that the deed is, in all respects, valid and sufficient, and properly recorded, if the acknowledgment is sufficient, and that the judgment, and all the proceedings under it, are valid and regular, and that the judgment lien had not been displaced, by lapse of time, or otherwise; the purchaser, under the judgment lien, contends that the mortgage, although prior in date, and also in its entry upon the record, did not create a prior lien upon the land, in favor of the Bank, to the judgment lien under which he purchased, for the reason, as he alleges, that there was no valid acknowledgment of the deed by Byrd, which was indispensably necessary to affect him with notice under the registry act.

The only objection to the certificate of acknowledgment, is, that the acknowledgment was taken and certified in Pulaski county, where the lands lie, by a justice of the peace, commissioned and qualified to act as such, within, and for, the county of Chicot. There is no question, but that the acknowledgment was taken in Pulaski county by a justice of Chicot county : and, the point at issue, is, was such act valid?

By the constitution of this State, the qualified voters of each township elect the justices of the peace for their respective townships. They are required to reside in the township for which they are elected. Their jurisdiction, as to the subject matter, cognizable before them, is defined; but, as to the territorial jurisdiction, nothing is said in the constitution. The Legislature has extended the jurisdiction of justices in certain cases, civil and

83BB

criminal, beyond the limits of their respective townships, and given them jurisdiction, co-extensive with the county in which the justice is elected, not only in regard to ministerial, but also judicial acts. *Digest, chap.* 95, *sec.* 1, *p.* 672. And we have held those statutes to be constitutional. *Humphries vs. McCraw,* 5 *Ark. Rep.* 62.

If the Legislature had power to confer, upon the justices of the peace, jurisdiction beyond the limits of their respective townships, and co-extensive with the limits of the counties in which they are elected, (and particularly when it is a judicial power thus conferred), there would seem to be no good reason, why a mere ministerial power might not be conferred upon them, any where within the limits of the State. And that they did so, we think fairly deducible, not only from the general terms used in conferring the power to take the acknowledgment of deeds, but by the previous course of legislation upon the subject.

The deed, in this case, was acknowledged before the Revised Statutes took effect, but after the formation of the State Constitution, and the election of officers under it. Under our Territorial Government, justices of the peace were chosen by a joint vote of the Legislature. *Steel & McCampbell's Digest, p.* 354, *sec.* 1. And, under the statute in force, during the Territorial Government, justices of the peace had power to take the acknowledgment of deeds, within the county in which they resided, and were qualified to act, and in which the land conveyed was situated. *Steel & McCampbell's Digest, p.* 133, *sec.* 4. So, that they were, in express terms, limited to their respective counties by legislative enactment; and so the law remained until after the formation of the constitution; and at the first session thereafter, indeed within a few months, a Legislature, composed of many of the members of the convention, who framed the constitution by an act, approved the 31st October, 1836, enacted "That, in addition to the mode now prescribed by law, the proof or acknowledgment of any deed of conveyance, or the relinquishment of dower of any such deed, &c., may be made before, and taken by, any judge or justice of

the peace, or notary public, in the State, or any clerk of the Circuit Court in any county in the State." Now, by reference to the old law, each of these officers had power to take the acknowledgment of deeds, and the only difference is, that the one limited the officer to the county, the other does not. What, then, are we to understand by the terms, "In addition to the mode now prescribed by law?" Most clearly, that the Legislature intended to enlarge the territorial jurisdiction of the officer; because, that is the only way by which it could be enlarged. There was no addition of officers, before whom the acknowledgment might be taken, and no change as to the manner of taking the acknowledgment.

These duties are, in no wise, connected with the judicial powers of the justice. He is required to keep no record of his acts; the only evidence of which, is his certificate upon the deed. It is, in its nature, an act of personal trust, and is conferred on several officers, some of whom have no judicial power, in consequence of their presumed capacity and integrity. It belongs to that class of duties known and recognized by this and other courts, as strictly ministerial. Thus, it has been held, that, taking a recognizance is a ministerial act. *Albee vs. Ward,* 8 *Mass. Rep.* 84; *Levy vs. Inglish,* 4 *Ark. Rep.* 65. Taking an affidavit is such. 4 *Bos. & Pul.* 37. And so, also, is the taking of the acknowledgment of a deed. *Gill vs. Fontleroy,* 8 *B. Mon.* 177; *Beaumont vs. Yateman,* 8 *Humph. Rep.* 543; *Hopkins vs. Menderback,* 5 *J. R.* 234; *Moore vs. Vance,* 1 *Ham. R.* 1; *Kinsman vs. Lewis,* 11 *Ohio Rep.* 479.

And being ministerial, it is held that the officer performing them, is not limited to his appropriate territorial jurisdiction, in the performance of them. Thus, in *Loveboard vs. Moorehead,* 4 *Bos. & Pul.* 37, a fine and recovery were allowed to pass, on an affidavit made before two English justices, who were, at the time of taking it, in France. And although it was held in *Jackson vs. Humphries,* 1 *J. R.* 498, that an oath, administered by a New York judge in Canada, was void; because, taken beyond his ter-

ritorial jurisdiction—that case was subsequently, in effect, over-ruled by the same court, in the case of *Hopkins vs. Menderback*, 5 *J. R.* 234. And in *Moore vs. Vance*, 1 *Ham. R.* 1, the case of *Jackson vs. Humphries*, was reviewed and expressly overruled. In that case, a deed, acknowledged before a United States Judge, for the territory north-west of the Ohio river, taken beyond the limits of the territory, was held to be valid, and this decision was subsequently re-affirmed by the same court in *Kinsman vs. Lewis*, 11 *Ohio Rep.* 479.

These decisions are strongly in point; and some of them carry the rule further than is necessary, in this case, or than we would perhaps feel inclined to do. They all consider the officer, whether judge, justice, or notary public, as acting, in this respect, rather as commissioner, to whom plenary power is given to take the acknowledgment of deeds, than as an officer, in the ordinary dis-charge of official duties.

Without, therefore, intending to be understood as extending this rule to the judicial acts of a judge or justice, or that, even when acting in a ministerial capacity, they may go beyond the limits of the State in which they are commissioned and qualified to act, as would seem to be the case in *Moore vs. Vance*, and *Loveboard vs. Morehead*, in which the act of the officer was held to be valid, even when done beyond the limits of the State, under whose authority they profess to act, we feel authorized, in view of the general terms in which the power is conferred, the nature of the act to be performed, and the authoritative precedents of other courts, to hold the acknowledgment of a deed, taken before a judge or justice of the peace, valid; if taken within the limits of the State, in which he is commissioned to act. And even if this was a doubtful question, as the statute may have been so construed, and acted under, and rights acquired to real estate, we should feel it our duty to adopt the most liberal construction, and one which would sustain and uphold the title to property here-tofore conveyed.

The case of *Share vs. Anderson*, 7 *Serg. & R.* 62, it is true,

would seem to hold a different rule. It was, in that case, held that the power to take the separate examination of a married woman, was limited to the particular district in which the justice presided, but this decision was expressly made upon the ground that the act was a judicial, not a ministerial act; and is, therefore, in direct contradiction to our own decisions, and those of most of the other States, and can have but little weight, in determining the question before us.

This question being settled, it is unnecessary to pursue our investigation further, or to settle the questions which would arise in case our decision had been different on this point, many of which have been settled by this court since the submission of the case.

Having decided that the acknowledgment was taken before a competent officer, there is no question but that the deed of mortgage created a prior specific lien upon the land, from the 16th of September, 1837, the day on which it was filed and admitted to record, in favor of the complainants. The court below, therefore, erred in deciding that the judgment lien creditors were not affected with constructive notice of the mortgage lien, and that the same was postponed to the prior rights of the judgment creditors, to satisfaction out of the lands of the creditor, Byrd, and this, wholly irrespective of the question as to whether such judgment creditors, and the purchaser under the judgments, had actual notice of such prior mortgage lien or not, or whether such notice, if given, would be equivalent to registry notice; with regard to which, we express no opinion, because, it is unnecessary to do so, in order fully to settle all the rights involved in the case; and, also, because the mortgage is prior in date to the statute, under which the counsel seem to suppose it must be determined.

The complainants are clearly entitled to prior right to satisfaction out of the mortgaged property, and for that purpose, the mortgage should be foreclosed, and the lands therein described sold, to pay the sum admitted by the parties to be due, together with ten per cent. interest thereon until paid.

The judgment creditors, for whom Watkins bought the property, no doubt, acquired a valid legal title to the land, subject to the prior incumbrance of the mortgage debt, and if they choose to hold their purchase, and pay off such incumbrance, they should be permitted to do so; but, if they fail to do this, the lands should be sold, and the proceeds applied to the payment of the debts of the several creditors, giving priority to each, according to date. The sums due to the several claimants seem to have been properly ascertained by the court below, from an agreed state of case submitted by the parties: after which, and the payment of the costs as herein directed, the overplus, if any, to be paid to said Byrd, or his legal representatives.

Let the decree of the court below be reversed, and set aside at the cost of the appellees, and a decree be entered in this court, in accordance with the opinion herein delivered, in conformity with the practice in equity, decreeing against the appellees the payment of the costs incurred at their instance in the court below, and the residue of the costs against the defendant, Byrd, to be paid out of the proceeds of the sale of the mortgaged premises.