### W. O. WHITNEY LUMBER & GRAIN CO. v. CRABTREE.

(Circuit Court of Appeals, Eighth Circuit. December 31, 1908.)

No. 2,779.

1. EJECTMENT (§ 142*)—RIGHT TO BETTERMENTS—GOOD FAITH—COLOR OF TITLE.
    Mansf. Dig. Ark. §§ 2644, 2645 (Ind. T. Ann. St. 1899, §§ 1928, 1929), declares that, if any person believing himself to be the legal or equitable owner under color of title has peaceably improved any land which on judicial investigation shall be decided to belong to another, the value of the improvements shall be ascertained by a court or jury, and the successful party shall pay the amount thereof, less damages and mesne profits, to the occupant, before he is required to yield possession. *Held*, that an occupant is only entitled to the benefit of such sections on proof that the betterments were constructed in good faith, and that the occupant held color of title.
    [Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 483–501; Dec. Dig. § 142.*]

2. INDIANS (§ 22*)—INDIAN LAND—RIGHTS OF LESSEES.
    White men who have obtained temporary possession of townsite lots or land in the Indian Territory by leases from Indians cannot use their possession to secure a fee-simple title to the exclusion of the Indian lessors.
    [Ed. Note.—For other cases, see Indians, Cent. Dig. § 55; Dec. Dig. § 22.*]

3. INDIANS (§ 16*)—INDIAN LANDS—LESSEES—COLOR OF TITLE.
    A finding that lessees of certain Indian lands made their improvements in good faith, believing that they had the right to the possession of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lands, did not constitute a finding that the lessees made the improvements under color of title.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 16.*]

4. ADVERSE POSSESSION (§ 70*)—"COLOR OF TITLE."

"Color of title" is that which appears to be, but in reality is not, title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 395; Dec. Dig. § 70.*

For other definitions, see Words and Phrases, vol. 2, pp. 1264–1273; vol. 8, p. 7606.]

5. INDIANS (§ 22*)—INDIAN LAND—RIGHTS OF OCCUPANT—"COLOR OF TITLE."

Where defendants acquired possession of Indian lands from lessees by purchase of what defendants called a "privilege of occupancy and improvements," knowing that their vendors did not and could not have title until the right to purchase had been investigated, and awarded by the duly constituted authorities, and the tribal ownership extinguished, which they knew had not been done, they did not have color of title required by Mansf. Dig. Ark. §§ 2644, 2645 (Ind. T. Ann. St. 1899, §§ 1928, 1929), in order to entitle them to an award for betterments as a condition to their being required to yield possession on their right of occupancy being terminated by judicial decree.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 22.*]

Appeal from the United States Court of Appeals in the Indian Territory.

For opinion below, see 104 S. W. 862.

E. L. Moore and James A. Plotner, for appellants.
William T. Hutchings, for appellee.

Before HOOK and ADAMS, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. Mrs. Crabtree sued for the possession of a lot in the town of Wagoner, Ind. T., and, the cause having been transferred to the equity docket, she obtained a decree which was affirmed by the local Court of Appeals. The appellants, who were defendants in the trial court, now complain of that part of the decree which requires them to remove their improvements from the lot, and they invoke the Arkansas betterment act (Mansf. Dig. §§ 2644, 2645 [Ind. T. Ann. St. 1899, §§ 1928, 1929]), which provides that if any person, believing himself to be the owner, either in law or equity, under color of title, has peaceably improved any land which, upon judicial investigation, shall be decided to belong to another, the value of the improvements shall be ascertained by the court or jury, and the successful party shall pay the amount thereof, less damages and mesne profits, to the occupant, before he is required to yield possession. In other words, they say they were entitled to retain possession until the value of their improvements less the rental value of the lot was paid them. To obtain the benefit of this statute, both good faith and color of title must appear. Beasley v. Security Co., 72 Ark. 601, 610, 84 S. W. 224; Penrose v. Doherty, 70 Ark. 256, 67 S. W. 398; White v. Stokes, 67 Ark. 184, 53 S. W. 1060; McCloy & Trotter v. Arnett, 47 Ark. 445, 2 S. W. 71. Did appellants act in good faith and have color of title?

The husband of Mrs. Crabtree, a citizen of the Creek Nation, had for some years been in the possession of the lot in controversy. In 1897 or 1898 he leased it for a rental of $10 per month. He died in the spring of 1900. His lessees ceased paying rent, and sold their improvements and privilege of occupancy to other parties, who in turn sold them to appellants in April, 1900. The latter thereupon erected additional improvements on the lot. In a contest before the Wagoner Townsite Commission the preferred right of Mrs. Crabtree to purchase was upheld, the lot was scheduled to her, and she perfected her title. The decision of the commission was approved by the Commissioner of Indian Affairs, and the appellants did not appeal. Mrs. Crabtree then sued to obtain possession and for the rental value, with the result already mentioned. The appellants contended that under section 15 of the Curtis act (Act June 28, 1898, c. 517, 30 Stat. 500) they, as the owners of the improvements, had a preferred right to acquire the title to the lot, and, failing in that, their purchase from the preceding occupants and continued possession gave them such color of title as entitled them to the benefit of the betterment act instead of being compelled to remove their improvements. In Fraer v. Washington, 125 Fed. 280, 60 C. C. A. 194, 197, this court, referring to the Curtis act, said:

"It is certain, we think, that Congress did not intend that white men who had obtained temporary possession of town-site lots or land in the Indian Territory from Indians by means of leases should make use of the possession so acquired to secure a fee-simple title to the demised property to the exclusion of Indian lessors to whom they had covenanted to restore the possession."

This conclusion is in harmony with the Creek agreement (Act March 1, 1901, c. 676, 31 Stat. 861), which in some respects superseded the Curtis act.

It was found in the trial court that appellants made their improvements on the lot in good faith, believing "they had the right to the possession of the same." But this does not in itself suffice to give color of title, and in view of known conditions it is questionable whether the requirement of good faith was met. Appellants do not appear to have inquired as to the nature and extent of the right of their vendors, though it was common knowledge that the title to such property was in the Creek Nation, and that individual occupants had no more than mere possessory rights; also that the Department of the Interior, proceeding under the authority of acts of Congress, was engaged in extinguishing tribal titles and causing the lots and lands to be owned and held in severalty. Conditions in the territory were exceptional, and contracts for and conveyances of real property were not governed by the rules which obtained elsewhere between persons not under disability. Moreover, in that country the common tenure of the white man or noncitizen was by leasehold, which implied conditions and responsibilities to members of the Indian tribes.

"Color of title" is that which appears to be, but in reality is not, title. Wright v. Mattison, 18 How. 50, 56, 15 L. Ed. 280. But appellants did not obtain even a semblance of title to the lot, and their manner and form of purchase was not that customary in the acquisition of real property. In negotiating for the property, they wrote the parties

from whom they afterwards bought and referred to it as a "privilege of occupancy and improvements." They knew that their vendors did not and could not have title until the right to purchase had been investigated and awarded by the duly constituted authorities and the tribal ownership extinguished, and this they knew had not been done. Betterment and occupying claimant acts proceed upon equitable principles, but if lessees of property like that involved here were permitted to repudiate their leases, and by unauthorized sales give color of title enabling purchasers to remain in possession until paid for improvements they might make, not only would leases reserving rent and requiring the surrender of the premises at the end of the terms be converted into instruments for improving the Indians out of their property, but the operations of the government in administering and settling the tribal affairs would be interfered with. In construing the Arkansas act, it is held that a bond for a title is not color of title (Beasley v. Securities Co., 72 Ark. 601, 610, 84 S. W. 224; White v. Stokes, 67 Ark. 184, 188, 53 S. W. 1060), and the appellants here are certainly in a position not more favorable.

The decree is affirmed.